# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS

DARRIUS DONELL MARTIN,     )
    )
        Petitioner,     )
    )
       v.     )    Case No. 16-cv-4129-JES
    )
UNITED STATES OF AMERICA,     )
    )
        Respondent.     )

## ORDER AND OPINION

Now before the Court is Petitioner Martin's Motion (Doc. 1) to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255. For the reasons set forth below, Petitioner's Motion (Doc. 1) is DENIED and the Court declines to issue a Certificate of Appealability.

### BACKGROUND[1]

On October 23, 2013, Darrius Martin was charged in the United States District Court for the Central District of Illinois in a five-count indictment alleging the following offenses: Felon in Possession of a Firearm, in violation of 18 U.S.C. §§ 922(g) and 924(a)(2) (Count 1); Distribution of Heroin, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) (Counts 2, 3, 4); and Possession with Intent to Distribute Heroin, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) (Count 5). R. 7. At the time Martin was charged with the above offenses, he was also on supervised release in two other federal criminal cases. In *United States v. Martin*, No. 99-40008 (C.D. Ill.), Martin pleaded guilty to conspiracy to distribute crack cocaine. In *United States v. Martin*, No. 12-40049 (S.D. Tex.), Martin was convicted of possession of shanks in the Bureau

---

[1] Citations to documents filed in this case are styled as "Doc. __." Citations to the record in the underlying criminal case, *United States v. Martin*, No. 13-cr-40060-JES (C.D. Ill.), are styled as "R.__."

of Prisons. In 2013, petitions for revocation alleging a violation of supervised release were filed in both cases.

On October 3, 2014, the Court held a change of plea hearing in Case No. 13-40060. A written plea agreement was also filed. R. 15. Therein, Martin agreed to plead guilty to Counts 1 and 2 of the Indictment, represented that he understood the elements for each charge to which he was pleading guilty, and acknowledged, *inter alia*, that he faced a possible mandatory minimum sentence of 15 years of imprisonment. As part of the plea agreement, Martin also waived his right to appeal his conviction or sentence, and further waived (with a limited exception) his right to collaterally attack his plea agreement, conviction, or sentence.

11. The defendant is aware that federal law, specifically, Title 28, Section 1291, affords a defendant a right to appeal a final decision of the district court and that federal law, specifically, Title 18, United States Code, Section 3742, affords a defendant a right to appeal the conviction and/or sentence imposed. Understanding those rights, and having thoroughly discussed those rights with the defendant's attorney, the defendant knowingly and voluntarily waives the right to appeal any and all issues relating to this plea agreement and conviction and to the sentence, including any fine or restitution, within the maximum provided in the statutes of conviction, and the manner in which the sentencing, including any fine or restitution, was determined, on any ground whatever, in exchange for the concessions made by the United States in this plea agreement, unless otherwise stated in this paragraph.

12. The defendant also understands that he has a right to attack his conviction and/or sentence collaterally on the grounds that it was imposed in violation of the Constitution or laws of the United States; that he received ineffective assistance from his attorney; that the Court was without proper jurisdiction; or that the conviction and/or sentence were otherwise subject to collateral attack. The defendant understands such an attack is usually brought through a motion pursuant to Title 28, United States Code, Section 2255. The defendant and the defendant's attorney have reviewed Section 2255, and the defendant understands his rights under the statute. Understanding those rights, and having thoroughly discussed those rights with the defendant's attorney, the defendant knowingly and voluntarily waives his right to collaterally attack the conviction and/or sentence. The defendant's attorney has fully discussed and explained the defendant's right to attack the conviction and/or sentence collaterally with the defendant. The defendant specifically acknowledges that the decision to waive the right to challenge any later claim of the ineffectiveness of the defendant's counsel was made by the defendant alone notwithstanding any advice the defendant may or may not have received from

the defendant's attorney regarding this right. Regardless of any advice the defendant's attorney may have given the defendant, in exchange for the concessions made by the United States in this plea agreement, the defendant hereby knowingly and voluntarily waives his right to collaterally attack the conviction and/or sentence. The rights waived by the defendant include his right to challenge the amount of any fine or restitution, in any collateral attack, including, but not limited to, a motion brought under Title 28, United States Code, Section 2255, excepting only those claims which relate directly to the negotiation of this waiver itself.

R. 15, at ¶¶ 11–12 (plea agreement).

In exchange for Martin's plea of guilty, the United States made several concessions. First, the United States agreed to dismiss Counts 3 through 5 of the Indictment. *Id*. at ¶ 23. Additionally, the United States agreed that Martin would qualify for an offense level reduction pursuant to U.S.S.G. § 3E1.1. *Id*. at ¶ 14. Finally, the United States agreed to allow Martin the opportunity to provide substantial assistance to the United States in the investigation and prosecution of others in exchange for the United States' motion for or agreement to a reduced sentence at a later date. *Id*. at ¶¶ 17–18.

At the change of plea hearing, the Court engaged in an extensive plea colloquy with Martin, assuring, *inter alia*, that he: (1) received a copy of the Indictment; (2) read and discussed the plea agreement with his counsel, and was satisfied with his counsel; (3) understood the terms of the plea agreement and that no one threatened him or made promises or assurances not set forth in the agreement; (4) understood and agreed to the appellate and collateral attack waivers; (5) acknowledged the factual basis for the plea was true and a basis for his plea of guilty; (6) understood the potential penalties he faced; and (7) understood that pleading guilty to the charges would be an admission that he violated his supervised release in his two prior federal criminal cases. R. 34.

After going over the terms of the plea agreement with Martin, the Court engaged in the following exchange:

> COURT: Do you have any questions at all about the charges against you?
> MARTIN: No.
> COURT: Your rights to trial?
> MARTIN: No.
> COURT: The potential penalties?
> MARTIN: No.
> COURT: The consequences of your plea?
> MARTIN: No.

R. 34, at 16. The Court then accepted Martin's plea of guilty after finding that Martin was fully competent and capable of entering an informed plea, that he was aware of the nature of the charges and consequences of his plea, and that his plea was knowing and voluntary and supported by an independent factual basis. *Id*. at 17–18.

On June 12, 2015, the Court held a combined sentencing hearing on the two violation petitions and his 2013 criminal case. R. 33 (sentencing transcript). With respect to the 2013 case, the only objection by the parties was whether Martin's prior convictions qualified him as an Armed Career Criminal under 18 U.S.C. § 924(e). If three or more Martin's prior convictions qualified under the Act, he faced a mandatory minimum sentence of 15 years of imprisonment. The United States argued that Martin had four prior convictions that qualified him both as an Armed Career Criminal under the ACCA and as a Career Offender under U.S.S.G. § 4B1.1: (1) conspiracy to distribute crack cocaine; (2) aggravated assault involving discharge of a firearm; (3) attempted armed robbery; and (4) possession of shanks in a federal correctional institution. The United States and Martin's counsel agreed that the convictions for aggravated assault and conspiracy to distribute crack cocaine qualified as ACCA and Career Offender predicates. R. 33, at 11–12. However, Martin's counsel, Donovan Robertson, argued that attempted armed robbery and possession of shanks in a federal correctional institution did not qualify under either the elements clause or residual clause of the ACCA. *See* 18 U.S.C. § 924(e)(2)(B); R. 33, at 12.

The Court agreed with the United States that all four of the prior convictions qualified as predicate offenses. *Id*. at 27. With respect to the conviction for possession of shanks in a federal correctional institution, the Court found that the offense qualified under the ACCA's residual clause, 18 U.S.C. § 924(e)(2)(B)(ii). *Id*. at 27–28. The attempted armed robbery conviction, the Court found, qualified as a predicate offense under the ACCA's elements clause, § 924(e)(2)(B)(i). *Id*. at 28. The Court then adopted the Presentence Report ("PSR"), which found that although Martin qualified as both an Armed Career Criminal and a Career Offender, the Career Offender guideline was higher and thus controlled. *Id*. at 28–29; R. 24, at ¶ 31 (Presentence Report). Under the guidelines, Martin's total offense level of 31 and criminal history category of IV resulted in a guideline range of 188 to 235 months of imprisonment. After considering the PSR, arguments from the parties, the probation officer's recommendation, and the statutory factors set forth in 18 U.S.C. § 3553(a), the Court imposed concurrent sentences of 188 months of imprisonment on Counts 1 and 2 of the 2013 case, concurrent with a sentence of 24 months of imprisonment in the 2012 revocation case. Additionally, the Court sentenced Martin to 51 months of imprisonment in the 1999 revocation case, to be served consecutively to the sentence in the 2013 case. Thus, Martin's aggregate custodial sentence was 239 months of imprisonment. *Id*. at 42. Written judgment was entered on June 19, 2015, and no direct appeal was filed in any of the three cases.

Almost a year later, on April 20, 2016, the United States filed a sealed motion in the 2013 case asking the Court to reduce Martin's sentence under Rule 35(b) of the Federal Rules of Criminal Procedure because Martin had substantially assisted the United States in the investigation and prosecution of others since the time of his sentencing. R. 32. The Court held a hearing on the United States' motion where Martin was again represented by Donovan

Robertson. Following the hearing, the Court agreed to reduce Martin's sentence by 70 months. Martin's new sentence in the 2013 case was reduced to 118 months of imprisonment, and his total sentence was reduced from 329 months to 169 months of imprisonment. R. 38.

Three weeks after Martin's sentence was reduced, he filed the instant § 2255 Motion. Doc. 1. Therein, Martin argues that counsel was ineffective because he: (1) induced Martin to plead guilty based on erroneous advice and coerced Martin into pleading guilty in order to conceal his unpreparedness for trial; (2) failed to properly investigate and familiarize himself with the facts of the case so as to deprive Martin of a meaningful defense; (3) failed to file a notice of appeal after Martin requested he do so; and (4) failed to review the plea agreement with Martin until 10 minutes prior to the change of plea hearing, rendering his plea invalid. *Id*. at 4–6. Additionally, Martin alleges that (5) following the Supreme Court's decision in *Johnson v. United States*, 135 S. Ct. 2251 (2015), his previous convictions can no longer be used to enhance in sentence under the either the ACCA or U.S.S.G. § 4B1.1, and (6) the Court imposed an unreasonably harsh sentence that was greater than necessary to satisfy the purpose of sentencing under 18 U.S.C. § 3553(a). *Id*. at 7–8. Based on these alleged errors, Martin asks the Court to vacate his sentence, reinstate the opportunity to file a direct appeal, and resentence him without the ACCA enhancement. *Id*. at 13. The United States filed a Response opposing Martin's Motion, and Martin has filed a Reply. Docs. 5, 7. This Order follows.

## LEGAL STANDARD

A petitioner may avail himself of § 2255 relief only if he can show that there are "flaws in the conviction or sentence which are jurisdictional in nature, constitutional in magnitude or result in a complete miscarriage of justice." *Boyer v. United States*, 55 F.2d 296, 298 (7th Cir. 1995), *cert. denied*, 116 S. Ct. 268 (1995). A § 2255 motion is not a substitute for a direct appeal.

*Doe v. United States*, 51 F.3d 693, 698 (7th Cir. 1995), *cert. denied*, 116 S. Ct. 205 (1995); *McCleese v. United States*, 75 F.3d 1174, 1177 (7th Cir. 1996). Federal prisoners may not use § 2255 as a vehicle to circumvent decisions made by the appellate court in a direct appeal. *United States v. Frady*, 456 U.S. 152, 165 (1982); *Doe*, 51 F.3d at 698. Accordingly, a petitioner bringing a § 2255 motion is barred from raising: (1) issues raised on direct appeal, absent some showing of new evidence or changed circumstances; (2) nonconstitutional issues that could have been but were not raised on direct appeal; and (3) constitutional issues that were not raised on direct appeal, absent a showing of cause for the default and actual prejudice from the failure to appeal. *Belford v. United States*, 975 F.2d 310, 313 (7th Cir. 1992), *overruled on other grounds by Castellanos v. United States*, 26 F.3d 717, 710–20 (7th Cir. 1994).

Criminal defendants are guaranteed the right to effective assistance of counsel under the Sixth Amendment. *Watson v. Anglin*, 560 F.3d 687, 690 (7th Cir. 2009). The seminal case on ineffective assistance of counsel is *Strickland v. Washington*, 466 U.S. 668 (1984). In *Strickland*, the Court stated that in order for a prisoner to demonstrate that counsel's performance did not meet the constitutional standard, the petitioner would have to show that "counsel's representation fell below an objective standard of reasonableness." *Id.* at 687–88; *Wyatt v. United States*, 574 F.3d 455, 458–59 (7th Cir. 2009). Courts, however, must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 690.

A prisoner must also prove that he has been prejudiced by his counsel's representation by showing "a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Absent a sufficient showing of both cause and prejudice, a petitioner's claim must fail. *United States v. Delgado*, 936 F.2d 303, 311 (7th Cir. 1991). Thus, the Court "need not determine whether counsel's performance was deficient before

examining the prejudice suffered by the defendant as a result of the alleged deficiencies."
*Strickland*, 466 U.S. at 697 ("If it is easier to dispose of an ineffectiveness claim on the ground of
lack of sufficient prejudice, which we expect will often be so, that course should be followed.").

DISCUSSION

*(1) Martin Knowingly Waived his Right to Appeal and Collaterally Attack his Sentence*

Before the Court may consider any of Martin's claims, it must first determine whether the
appellate and collateral attack waivers in his plea agreement are valid. "A defendant may validly
waive both his right to a direct appeal and his right to collateral review under § 2255 as a part of
his plea agreement." *Keller v. United States*, 657 F.3d 675, 681 (7th Cir. 2011) (quoting *Jones v.
United States,* 167 F.3d 1142, 1144–45 (7th Cir. 1999)). However, "[a] guilty plea must be both a
knowing and voluntary act." *Key v. United States*, 806 F.2d 133, 136 (7th Cir. 1986). Thus,
Martin's guilty plea and the waivers contained therein will be enforced unless "the plea
agreement was involuntary, the district court relied on a constitutionally impermissible factor
(such as race), the sentence exceeded the statutory maximum, or the defendant claims ineffective
assistance of counsel in connection with the negotiation of the plea agreement." *Keller*, 657 F.3d
at 681 (internal citations omitted).

*(a) Martin's Plea was Knowing and Voluntary*

Martin alleges that the waivers contained in his plea agreement are invalid because:

> As previously set forth in Martin's § 2255 [Motion], trial counsel Robertson visited
> with Movant only moments before the Rule 11 plea hearing was scheduled to be
> conducted in U.S. District Court. Obviously, defense counsel Robertson waited to
> the very last possible minute to discuss, explain and ensure that Movant understood
> the language contained in the plea agreement, which of course would have been
> impossible in such a short time span and the circumstances under which the plea
> agreement was being presented to Movant Martin. Unrealistically, trial counsel
> Donovan S. Robertson, Esq., spent a grand total of just "TEN MINUTES" with
> Movant going over the entire plea agreement.

8

Moreover, defense counsel's advice should have permitted his client to make an informed and conscious choice. Alarmingly, Movant was never provided this opportunity by defense counsel! In a nutshell, Movant Martin didn't have a clue as to what he was actually pleading guilty to or the language contained in the plea agreement. With all due respect, how could he?

Doc. 1-1, at 13–14.

Martin's assertions that his plea was not knowing and voluntary are flatly contradicted by the record. First, at the change of plea hearing, the Court engaged in an extensive plea colloquy with Martin, assuring, *inter alia*, that he: (1) received a copy of the Indictment; (2) read and discussed the plea agreement with his counsel, and was satisfied with his counsel; (3) understood the terms of the plea agreement and that no one threatened him or made promises or assurances not set forth in the agreement; (4) understood and agreed to the appellate and collateral attack waivers; (5) acknowledged the factual basis for the plea was true and a basis for his plea of guilty; (6) understood the potential penalties he faced; and (7) understood that pleading guilty to the charges would be an admission that he violated his supervised release in his two prior federal criminal cases. R. 34. After going over the terms of the plea agreement with Martin, the Court engaged in the following exchange:

COURT: Do you have any questions at all about the charges against you?
MARTIN: No.
COURT: Your rights to trial?
MARTIN: No.
COURT: The potential penalties?
MARTIN: No.
COURT: The consequences of your plea?
MARTIN: No.

R. 34, at 16. The Court then accepted Martin's plea of guilty after finding that Martin was fully competent and capable of entering an informed plea, that he was aware of the nature of the charges and consequences of his plea, and that his plea was knowing and voluntary and supported by an independent factual basis. *Id*. at 17–18.

If Martin's assertions to the judge at the change of plea hearing were true, those in his § 2255 Motion must be false. "Judges need not let litigants contradict themselves so readily; a motion that can succeed only if the defendant committed perjury at the plea proceedings may be rejected out of hand unless the defendant has a compelling explanation for the contradiction." *United States v. Peterson*, 414 F.3d 825, 827 (7th Cir. 2005). Yet rather than providing a "compelling explanation for the contradiction," *id.*, Martin ignores the issue completely.

Martin argues that he did not understand the plea because his attorney only spent ten minutes going over it with him before the change of plea hearing. Again, if Martin needed more time to review the terms of the agreement, he could have asked his attorney or the Court for additional time. Instead, Martin responded in the negative when the Court asked him if he had any questions regarding the charges against him, his right to a trial, the potential penalties he faced, or the plea agreement. R. 34, at 16. Moreover, there is no bright-line rule regarding the amount of time an attorney must spend going over a plea agreement with his client. All that is required is that defendant knowingly and voluntarily enter into the agreement. *Key*, 806 F.2d at 136. The record in Martin's criminal case—from the change of plea hearing to the sentencing hearing, as well as letters from Martin to the Court in between—indicate that Martin knew the nature of the charges against him, the terms of the plea agreement, and the potential penalties. *See e.g.*, R. 16 (letter from Martin arguing that his conviction for possession of a shank in prison does not qualify as a violent felony under the residual clause of § 924(e)(2)); R. 19 (letter from Martin complaining about counsel and stating that his case "could possibly have very severe penalties if I'm found to be an Armed Career Criminal"). Martin's plea was thus knowing and voluntary.

*(b) Martin's Attorney was not Ineffective in Negotiating the Plea*

Martin also alleges that his attorney was ineffective in negotiating the plea agreement.

Specifically, Martin states:

> Further exacerbating and demonstrating the deficient legal representation rendered by defense counsel Robertson occurred when counsel permitted and actually encouraged and induced Movant to accept the tendered plea agreement fully aware of the fact several of Movant's prior convictions would not qualify as predicate offenses when sentenced as an Armed Career Offender (ACCA) [*sic*]. An attorney's failure to zealously challenge the use of a prior conviction to classify Movant as an Armed Career Offender [*sic*] or Career Offender when that conviction is facially insufficient to satisfy the definition of a "crime of violence" under § 4B1.2 constitutes deficient performance under *Strickland*.

Doc. 1-1, at 12. Waivers in a plea agreement may be unenforceable if the defendant's counsel was ineffective in connection with the negotiation of the plea agreement. *Key*, 806 F.2d at 138. In order to satisfy the *Strickland* test in the context of a guilty plea, the petitioner must show that counsel's performance fell below an objective standard of reasonableness and that a reasonable probability exists that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. *Id.* (citing *Hill v. Lockhart*, 106 S. Ct. 366, 370 (1985)).

Again, Martin's claim lacks any support in the record. First, Martin's counsel was not ineffective when negotiating the terms of the plea agreement. In fact, it appears from the handwritten changes to the plea agreement that counsel recognized the significance an ACCA sentence and thus insisted that the plea agreement not include a concession that Martin's prior convictions qualified him for a mandatory minimum sentence of 15 years. *See* R. 15, at 3. By doing so, Martin's counsel was able to—and did in fact—argue at the sentencing hearing that two of Martin's prior convictions did not qualify under the ACCA. *See* R. 22 (sentencing memorandum). Again, Martin's own letters to the Court demonstrate that he understood that the ACCA issue would be decided by the Court at sentencing. *See* R. 19, at 2 ("I am in no way trying

to withdraw my plea, I have accepted responsibility for my crime and understand that a punishment will be handed down. But as it stands right now my case carries a 15 year to life sentence if the augment for the ACCA does not go in my favor."). The fact that the Court did not ultimately agree with counsel's arguments does not make counsel's performance deficient. Because Martin cannot show that his plea was involuntary or that his counsel's performance was deficient with respect to negotiating the plea agreement, the waivers therein are valid and must be enforced. *United States v. Quintero*, 618 F.3d 746, 752 (7th Cir. 2010); *Nunez v. United States*, 546 F.3d 450, 453 (7th Cir. 2008).

*(2) Martin's Remaining Claims are Meritless*

Even if Martin did not waive his right to bring a § 2255 motion, his remaining claims are meritless. Martin argues that his attorney was ineffective for failing to investigate the facts of his case and prepare for trial. Doc. 1, at 4. He does not elucidate what his attorney should have investigated or what preparation his attorney should have done for trial. On the other hand, Martin's attorney stated the essential facts of Martin's case in a sentencing memorandum:

> On September 16, 2013, the defendant, in a recorded telephone conversation, offered to sell a MEG agent some heroin and a firearm in exchange for $300.00. Later that day, the defendant transferred .5 gram of heroin to the undercover agent and, at the same time, told him there was a firearm in a bag under a park bench, which the agent then recovered. The bag contained a Smith and Wesson .22 cal model 63 revolver. PSR. par. 11. Three other heroin transactions tool place over the next several weeks. PSR pars. 12, 14, 15. In total, the drug offense involved 1.3 g. of heroin. PSR. par. 17. The defendant admitted his conduct in a post-miranda interview. PSR. par. 16.

R. 22, at 2. Given the confession, recorded phone call, and exchange of guns and drugs with an undercover law enforcement officer, it is unlikely that additional (unspecified) investigation or preparation by counsel would have had a meaningful impact on Martin's case. Regardless, Martin's conclusory allegation that his attorney should have conducted a more thorough

investigation is insufficient to establish ineffective assistance of counsel. *See, e.g.*, *Strickland v. Washington*, 466 U.S. 668, 691 (1984) ("In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.").

Martin also argues that his counsel was ineffective for failing to file a notice of appeal. "A lawyer who respects his client's formal waiver of appeal does not render objectively deficient service, and the waiver (coupled with the plea itself) shows that [the defendant] did not suffer prejudice even if his lawyer should have filed a notice of appeal. Had an appeal been filed, it would have been dismissed in short order." *Nunez v. United States*, 546 F.3d 450, 453 (7th Cir. 2008); *Id*. at 455 ("[A] lawyer has a duty to the judiciary to avoid frivolous litigation—and an appeal in the teeth of a valid waiver is frivolous.") *but see Garza v. State*, 162 Idaho 791, 796, 405 P.3d 576, 581 (2017), *cert. granted,* No. 17-1026, 2018 WL 534810 (U.S. June 18, 2018) (presenting question of whether "the 'presumption of prejudice' recognized in *Roe v. Flores-Ortega,* 528 U.S. 470 (2000), appl[ies] where a criminal defendant instructs his trial counsel to file a notice of appeal but trial counsel decides not to do so because the defendant's plea agreement included an appeal waiver[.]").

Martin argues that his ACCA-enhanced sentence is invalid following the Supreme Court's decision in *Johnson v. United States*, 135 S. Ct. 2251 (2015). *Johnson* held that the residual clause of the ACCA, § 924(e)(2)(B)(ii) is void for vagueness. Here, Martin was designated as an Armed Career Criminal based on four prior convictions: (1) conspiracy to distribute crack cocaine; (2) aggravated assault involving discharge of a firearm; (3) attempted armed robbery; and (4) possession of shanks in a federal correctional institution. The United States and Martin's counsel agreed that the convictions for aggravated assault and conspiracy to

distribute crack cocaine qualified as ACCA and Career Offender predicates. R. 33, at 11–12. However, Martin's counsel argued that attempted armed robbery and possession of shanks in a federal correctional institution did not qualify under either the elements clause or residual clause of the ACCA. *See* 18 U.S.C. § 924(e)(2)(B); R. 33, at 12. The Court agreed with the United States that all four of the prior convictions qualified as predicate offenses. *Id*. at 27. Following *Johnson*, Martin's conviction for possession of shanks in a federal correctional institution does not qualify as a violent felony for the purposes of the ACCA. However, Martin's three remaining prior convictions all still qualify as ACCA predicate offenses triggering the 15-year mandatory minimum following *Johnson*.

Specifically, Martin alleges that his prior conviction for attempted armed robbery no longer qualifies as a violent felony under the ACCA. At the time of his conviction, Illinois defined robbery as:

> § 18-1. Robbery.
> (a) A person commits robbery when he or she takes property, except a motor vehicle covered by Section 18-3 or 18-4, from the person or presence of another by the use of force or by threatening the imminent use of force.

720 ILCS 5/18-1 (eff. 1962 through 2009). Attempt was defined as:

> A person commits an attempt when, with intent to commit a specific offense, he does any act which constitutes a substantial step toward the commission of that offense.

720 ILCS 5/8-4(a); Doc. 22, at 5 (Sentencing Memorandum). The offense of robbery has as an element the use or attempted use of force. The completed offense thus indisputably falls under the elements clause of the ACCA, § 924(e)(2)(B)(i). In fact, "the Seventh Circuit has repeatedly held that robbery as defined by Illinois law is a crime of violence" because it falls within the elements—and not the residual—clause of the ACCA. *Mosley v. United States*, No. 3:16-CV-00206-NJR, 2017 WL 4518337, at *2 (S.D. Ill. Oct. 10, 2017) (citing *United States v. Smith*, No.

16-1895, 2016 WL 5867263, at *1 (7th Cir. Oct. 7, 2016); *United States v. Watson-El*, 376 Fed. Appx. 605, 608 (7th Cir. 2010); *United States v. Melton*, 75 Fed. Appx. 539, 545 (7th Cir. 2003); *United States v. Bedell*, 981 F.2d 915, 916 (7th Cir. 1992); *United States v. Dickerson*, 901 F.2d 579, 584 (7th Cir. 1990)). Moreover, "[w]hen a substantive offense would be a violent felony under § 924(e) and similar statutes, an attempt to commit that offense also is a violent felony." *Hill v. United States*, 877 F.3d 717, 719 (7th Cir. 2017). Thus, Martin's attempted armed robbery conviction remains as a valid qualifying predicate offense under the ACCA, regardless of *Johnson*.

Martin also challenges his designation as a Career Offender under U.S.S.G § 4B1.1. However, challenges to advisory guidelines calculations, including Career Offender designations, are not subject to vagueness challenges on collateral review. Two decisions from the Seventh Circuit, *Hawkins v. United States*, 706 F.3d 820 (7th Cir. 2013) (*Hawkins I*), and *Hawkins v. United States*, 724 F.3d 915 (7th Cir. 2013) (*Hawkins II*), preclude relief for Martin because together they hold a petitioner may not seek on collateral review to revisit the district court's calculation of his advisory guidelines range.

Finally, Martin argues that the Court imposed an unreasonably harsh sentence that was greater than necessary to satisfy the purpose of sentencing under 18 U.S.C. § 3553(a). Doc. 1, at 8. But Martin's sentence was at the bottom of the guideline range, and far short of the maximum sentence allowed by statute. Because Martin's sentence was not greater than allowed by statute, his appeal and collateral attack waivers are valid and thus preclude this claim. *See Keller*, 657 F.3d at 681.

# CERTIFICATE OF APPEALABILITY

Where a federal court enters a final order adverse to the petitioner, "the district court must issue or deny a certificate of appealability." Rule 11(a) of the Rules Governing Section 2255 Proceedings for the United States District Courts. To obtain a certificate, the petitioner must make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). When a district court denies a petition on procedural grounds, in order to obtain a certificate, the petitioner must show both that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id*. at 478.

The Court declines to issue a certificate of appealability here because it is not debatable that Petitioner Martin failed to make a substantial showing of the denial of a constitutional right with respect to his ineffective assistance and *Johnson* claims, and it is not debatable that Martin knowingly and voluntarily waived his right to seek relief under § 2255, and therefore forfeited his right to adjudicate that claim in a federal habeas court. Accordingly, the Court declines to issue a Certificate of Appealability.

**CONCLUSION**

For the reasons set forth above, Martin's Motion (Doc. 1) is DENIED and the Court

declines to issue a Certificate of Appealability.


This matter is now terminated.

Signed on this 26th day of June, 2018.

<u>s/ James E. Shadid</u>
James E. Shadid
Chief United States District Judge